UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-23-388-G |
| | ) |
| RONNIE GERALD WIGGINS, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Now before the Court is a Motion to Suppress (Doc. No. 18), filed through counsel by Defendant Ronnie Gerald Wiggins. The Government has responded in opposition (Doc. No. 24). On November 16, 2023, the Court conducted an evidentiary hearing on the Motion.[1] Defendant appeared personally and through counsel, Assistant Federal Public Defender Bonnie Blumert. The Government appeared through Assistant U.S. Attorney Daniel Gridley. The Court heard the testimony of Norman Police Department Officer Kolton Robertson and United States Probation Officer Steve Ritchey. Upon consideration of the evidence and the parties' arguments, the Court denies the Motion.

## I.   Relevant Standards

"The purpose of a suppression hearing is 'to determine preliminarily the admissibility of certain evidence allegedly obtained in violation of defendant's rights under the Fourth and Fifth Amendments.'" *United States v. Maurek*, 131 F. Supp. 3d 1258, 1261-

---

[1] At this hearing, the Court also heard argument and took evidence on the Government's request for revocation of Defendant's supervised release in a separate criminal case, *United States v. Wiggins*, No. CR-00-74-G (W.D. Okla.).

62 (W.D. Okla. 2015) (quoting *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982)). "'The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search.'" *Id.* at 1262 (quoting *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009)). The Government must then prove by a preponderance of the evidence that the search or seizure that occurred was lawful—e.g., that exigent circumstances or another exception to the warrant requirement existed or that the evidence sought to be suppressed was not "fruit of the poisonous tree." *See United States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *see also United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) ("Though the defendant bears the burden of proving whether and when the Fourth Amendment was implicated, the government then bears the burden of proving that its warrantless actions were justified by an exception." (alterations and internal quotation marks omitted)).

II.   Background

On October 30, 2022, just after midnight, the Norman Police Department ("NPD") received two 911 calls regarding a white Mercedes SUV bearing an Oklahoma tag with a specified number. The call notes indicated that the vehicle had been increasing and decreasing speeds randomly and was being driven erratically. Units were dispatched, and NPD Officers Kolton Robertson and Mason Walker located the SUV in the drive-through line at a McDonald's restaurant and confirmed a match of the license tag.

Officer Robertson relayed the tag number via radio to his dispatch for a registration check. Officer Robertson then approached the SUV and spoke to the driver and sole

occupant, Defendant, through the passenger window. Officer Robertson informed Defendant that there had been calls received about his driving. Defendant denied having anything to drink. Officer Robertson asked for Defendant's identification, which Defendant provided. Defendant stated that he had gotten turned around on a detour.

Officer Robertson relayed Defendant's identification information to his dispatch, initiating the process of a check for outstanding warrants as to Defendant, and retained Defendant's driver's license. Officer Robertson stepped away from the SUV to speak with Officer Walker. Officer Robertson stated, "I don't have any odor, doesn't have red watery eyes, not really slurring—that's just the way he talks . . . pupils are reactive to light. He probably just sucks at driving." Def.'s Mot. to Suppress Ex. 1 (Doc. No. 18-1).

Officer Walker suggested a modified horizontal gaze nystagmus (HGN) test to evaluate Defendant for signs of intoxication. Officer Robertson agreed and moved to the driver's side of the vehicle; he performed the HGN test and found no signs of impairment. Officer Robertson admonished Defendant about his driving and then indicated that Defendant could leave "as soon as they tell me you're not wanted for murder or something crazy . . . . I don't think you are, but I just gotta check." *Id.* The two briefly discussed Defendant's prison tattoos.

Approximately one minute after conclusion of the HGN test, Officer Robertson received an initial response from dispatch indicating that Defendant was subject to an arrest warrant. While standing at the driver's side window, Officer Robertson heard some chatter on his police radio and stated, "What? They can't confirm it?" *Id.* In his written report, Officer Robertson stated that dispatch had told him Defendant "had a possible warrant for

3

a Probation violation" and at that point "the interaction transitioned to a detainment." Def.'s Mot. to Suppress Ex. 5 (Doc. No. 18-5) at 5-6.  Officer Robertson told Defendant that he thought it was police dispatch telling him Defendant was on parole.  Defendant confirmed to the officer that he was on probation.

Based upon the possible warrant, Officer Robertson asked Defendant to move his vehicle out of the drive-through line to an area on the north side of the property.  Defendant parked the SUV in front of the McDonald's dumpster.  Both officers followed him on foot.  After some conversation regarding Defendant's previous conviction and prison time, Officer Robertson returned to his patrol car.

About four minutes after the initial notification of a possible warrant, Officer Robertson received confirmation of an outstanding arrest warrant when dispatch advised that Defendant "had a full extradition warrant out of Texas for a probation violation on a Murder conviction and an officer safety flag showing that he has violent tendencies." *Id.* at 6.  Officer Robertson then requested to dispatch that a third police officer respond to the scene.

Less than one minute later, Officer Robertson exited his car, reapproached the SUV, and asked Defendant to step out of the vehicle.  Defendant exited the SUV.  Officer Robertson had Defendant step to the rear of the vehicle.  When officers attempted to cuff Defendant, Defendant resisted, and a struggle ensued.  Several responding officers assisted in getting Defendant into custody.

Defendant was then arrested for parole violation. After Defendant was put in the back of a patrol car, NPD officers conducted an impound search of Defendant's SUV and found ammunition, magazines, and a Sig Sauer pistol.

### III. Discussion

Defendant has been indicted on one count of possession of a firearm (the Sig Sauer pistol found in the console of his vehicle) despite being prohibited by reason of a prior felony conviction. *See* Indictment (Doc. No. 14). Defendant argues that the pistol seized from his car must be suppressed as "fruit of the poisonous tree," based upon his "illegally prolonged detention" and the impound search that followed. Def.'s Mot. to Suppress at 6-10. Defendant asserts that the traffic stop "extended beyond what was necessary to check on a potentially intoxicated driver." *Id.* at 8. According to Defendant, once his sobriety was established, the reason for the stop "evaporated" and the officers' suspicion was dispelled, and so there was no basis to wait for the result of the warrant check. *Id.* The Government responds that the traffic stop was valid both upon initiation and during its duration and that police officers are permitted to take various precautions during a traffic stop. *See* Gov't's Resp. at 4-8.

#### A. Scope of Detention

"[A]n investigatory stop must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Burleson*, 657 F.3d 1040, 1045 (10th Cir. 2011) (internal quotation marks omitted). "This is an objective test; the reasonableness of the stop does not depend on the actual motivations of the individual officers involved." *Id.* at 1047 (alteration and internal quotation marks omitted). "[T]here

5

is no absolute rule for determining how long an investigative detention may continue before it becomes unreasonable under the Fourth Amendment." *Id.* at 1049 n.5 (internal quotation marks omitted). "Rather, the length of the stop and the potential intrusion on an individual's Fourth Amendment rights must be juxtaposed against the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id.* (internal quotation marks omitted).

Having considered the testimony and evidence in the record, including body camera footage, the Court agrees with the Government that the police officers did not exceed the permissible scope of the detention.

As to the making of the request for a warrant check, "it is well-settled in the traffic-stop context that while an investigative detention is ongoing, a police officer may obtain an individual's name and check that name for outstanding warrants." *Id.* at 1045. "It is objectively reasonable for an officer, in detaining an individual who has committed a traffic violation, to investigate whether a warning, a citation, or some other action is warranted." *Id.* at 1048. Here, there is no dispute that Officer Robertson *requested* a warrant check during a lawful investigative detention.[2] Officer Robertson communicated Defendant's name to dispatch for the warrant check less than two minutes after arriving at the scene. *See* Def.'s Mot. to Suppress Ex. 1. Defendant does not argue that Officer Robertson "had concluded [his] predicate investigation" and "assess[ment] [of] the circumstances" prior to

---

[2] Defendant does not challenge the initial traffic stop or dispute that the stop was "supported by a reasonable suspicion of criminal activity." *United States v. Moran*, 503 F.3d 1135, 1140 (10th Cir. 2007) (internal quotation marks omitted).

requesting the warrant check or that he requested the check "for the sole purpose of lengthening the stop." *Burleson*, 657 F.3d at 1048; *United States v. Chavez*, No. 19-4121, 2021 WL 4438742, at *4 (10th Cir. Sept. 28, 2021); *cf. United States v. Lopez*, 443 F.3d 1280, 1286 (10th Cir. 2006) (affirming suppression where officer did not have reasonable suspicion to detain defendant and could not properly run a warrant check incident to that detainment).

Defendant argues, instead, that the authority to detain Defendant ended as soon as the purpose of the investigative detention ended. Therefore, says Defendant, it was illegal to detain him after it had been established that he was not intoxicated, no matter if the officers were still awaiting the result of a timely requested warrant check.

Here, the time between completion of the HGN test—the point that reasonable suspicion dissipated, according to Defendant—and the initial result of the warrant check (notification of a possible warrant) was approximately one minute. During that period, Officer Robertson was talking to Defendant and, at least in part, wrapping up the investigative detention. There was no undue delay in the processing of the warrant check: Officer Robertson was notified of the possible outstanding warrant only two and a half minutes after initiating the warrant check and approximately three minutes and thirty-five seconds after initially contacting Defendant.

In these circumstances, the Court does not find that there was any unreasonable or unlawful detention of Defendant while the officers waited for the result of the warrant check. When stopped for a traffic violation, a motorist "expects an officer to take reasonable measures to protect officer safety during the stop" and to make "ordinary

7

inquiries incident to the traffic stop." *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001), *overruled on other grounds as recognized in United States v. Stewart*, 473 F.3d 1265 (10th Cir. 2007); *Chavez*, 2021 WL 4438742, at *4 (alteration and internal quotation marks omitted). These reasonable measures include "determining whether a detained motorist has a criminal record or outstanding warrants." *Holt*, 264 F.3d at 1221-22. And "the Fourth Amendment does not require officers to use the least intrusive or most efficient means conceivable to effectuate a traffic stop." *United States v. Mayville*, 955 F.3d 825, 832 (10th Cir. 2020).

The Tenth Circuit has found that a duration of "three to five minutes" from the initial stop to dispatch notification of a possible warrant was "well within an objectively reasonable time" needed by an officer to conduct an investigatory stop. *Burleson*, 657 F.3d at 1049. Here, likewise, the detention of Defendant did not "exceed the reasonable duration required to complete the purpose of the stop." *Id.* at 1045 (internal quotation marks omitted); *see also United States v. Rodriguez*, No. CR-14-304-HE, 2015 WL 431632, at *6 (W.D. Okla. Feb. 2, 2015) ("Once [the officer] had *completed* the [records] check, the grounds for the continued detention of Mr. Rodriguez were gone." (emphasis added)).

### B. Inevitable Discovery

Alternatively, even assuming the detention was unlawfully prolonged, the Government argues that the pistol is not subject to suppression as "fruit of the poisonous tree" because, among other reasons, it "would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 579 U.S. 232, 238 (2016); *see* Gov't's Resp. at 9-10; *see also United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000)

(explaining that the government may defeat suppression by proving the evidence "would have been inevitably discovered").

The Court agrees. Had the officers released Defendant immediately upon completing the HGN test, they would have easily located and re-arrested him upon learning of the potential warrant one minute later. This is certainly true if the investigatory stop properly included a reasonable time to wrap up the interaction and return Defendant's license and other paperwork. Even absent a "wrap up" period, Defendant either would have remained in line at the drive-through or exited the line and driven only a short distance before being stopped again. The pistol would have then been found during the resulting inventory search of Defendant's vehicle.

## CONCLUSION

For all of these reasons, Defendant's Motion to Suppress (Doc. No. 18) is DENIED.

IT IS SO ORDERED this 22nd day of December, 2023.

_____
CHARLES B. GOODWIN
United States District Judge